Jack **SOLINGER**, Plaintiff,

v.

**A & M RECORDS, INC., et al., Defendants.**

No. C–74–2752 SW.

United States District Court, N. D. California.

May 11, 1982.

Blecher & Collins, Maxwell M. Blecher, Howard F. Daniels, Los Angeles, Cal., for plaintiff.

Kurt W. Melchior, Robert A. Spanner, Severson, Werson, Berke & Melchior, San Francisco, Cal., Thomas P. Lambert, Edward M. Medvene, Mitchell, Silberberg & Knupp, Los Angeles, Cal., Norman C. Hile, Vernon Zvoleff, Orrick, Herrington & Sutcliffe, San Francisco, Cal., Jacob Adajian, Encino, Cal., Francis Willmarth, Long & Levitt, San Francisco, Cal., for defendants.

## MEMORANDUM OF OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SPENCER WILLIAMS, District Judge.

### INTRODUCTION

This matter came on for a hearing on the defendants' motions for summary judgment. On March 4, 1981, after careful consideration of the lengthy briefs and arguments of counsel, the pleadings, affidavits and other materials in the record, the court announced at a scheduled hearing that it was granting the defendants' motions. After awaiting the resolution of matters in this circuit on potentially related issues, the court entered judgment in this case. The following constitutes a brief written explanation of the court's reasons for granting the defendants' motions.

### FACTUAL BACKGROUND

This action involves an alleged conspiracy in the record marketing and distribution industry. Jack Solinger, the former president and general manager of Independent Music Sales, Inc. (IMS), seeks damages arising from alleged antitrust violations which include a territorial allocation conspiracy between defendants A & M Records (A&M) and Motown Record Corporation (Motown) and various actions taken by defendant Transamerica Corporation that resulted in a direct lessening of competition in the industry.

Beginning in 1972, Solinger attempted to purchase IMS on behalf of a corporation called J. N. S. Enterprises (JNS), an entity in which he was to be a principal shareholder. Solinger allegedly obtained financing and negotiated an option to buy IMS, a

**404**

right which had expired by the time the allegedly wrongful conduct took place.

While Solinger was negotiating the purchase he approached A&M and asked if it would patronize IMS should JNS be successful in its bid, and if so, would A&M give IMS a one and one-half to two year commitment. After A&M refused to give the guarantee, Solinger failed to contact Motown or any other record companies. He now alleges that JNS did not complete the purchase because IMS could not survive without the A&M contract. Shortly thereafter, A&M terminated IMS as a distributor on the basis that it was doing poor work.

On June 29, 1976, this court granted the defendants' motions to dismiss on the ground that the plaintiff lacked standing to sue for antitrust violations because he was only a prospective purchaser of a business. The Ninth Circuit Court of Appeals reversed this finding and remanded for further proceedings to ascertain the undisputed facts and determine whether Solinger has standing. *Solinger v. A&M Records, Inc.*, 586 F.2d 1304 (9th Cir. 1978), *cert. denied*, 441 U.S. 908, 99 S.Ct. 1999, 60 L.Ed.2d 377 (1979). The Ninth Circuit also established the law of the case that Solinger did not have standing in his capacity as an employee of IMS to pursue his antitrust claims. *Id.* at 1311.

Operating on the factual assumption that Solinger himself was the prospective purchaser of IMS, the Ninth Circuit invited this court to entertain a motion for summary judgment on the standing question. Specifically the Court of Appeals directed this court to consider whether there are genuine issues of material facts as to the existence of (1) any antitrust violations, (2) any injury to the plaintiff's business or property, and (3) a causal relationship between any losses and the substantive violations. *Id.* at 1309–11.

Accordingly, this court entertained the instant motions for summary judgment and considered whether there is any factual basis for the claim that Solinger himself was the "prospective purchaser" of IMS and if he personally had taken "substantial de-

monstrable steps to enter an industry." *Id.* at 1309.

After these further proceedings, the court determines that this case involves many undisputed facts that reveal that no material issues of fact remain concerning Solinger's individual standing or the presence of antitrust violations. These facts are outlined below.

1. As expressly described in the purchase agreement, JNS, and not Solinger, was going to be the purchaser of IMS.

2. All IMS facilities and services were to be rented to JNS as the prospective purchaser.

3. JNS intended to purchase IMS from its sole *shareholder*, Zenith Distributing Company, and was only going to be a holding company for IMS' *stock.*

4. After JNS allegedly was prevented from entering the industry, the entity was never formed as a holding company and Solinger decided not to form the company for any other purpose.

5. All documents relating to the sale were to be signed by Solinger "on behalf of JNS Enterprises."

6. Solinger was not going to be JNS' sole shareholder but one Dixon would be a co-stockholder.

7. Solinger chose not to be named in his individual capacity in the purchase agreement and further he refused to act as a guarantor of the purchase of stock.

8. Solinger failed to obtain employment contracts, a union agreement, a line of credit, long-term space or any sources of supply on behalf of JNS, the prospective purchaser of IMS.

9. Solinger let JNS' option to purchase IMS lapse after A&M declined to guarantee continuing use of IMS as the distributor.

LEGAL STANDARDS

Section 4 of the Clayton Act grants a cause of action to "[a]ny person...injured in his business or property by reason of anything forbidden in the antitrust laws..." 15 U.S.C. § 15. In order to restrict the expansive liability that might

flow from a literal reading of this statute, courts have limited the right of action to those directly injured by the anticompetitive behavior. *See John Lenore Co. v. Olympia Brewing Co.*, 550 F.2d 495, 498–500 (9th Cir. 1977); *In re Multidistrict Vehicle Air Pollution M.D.L. No. 31*, 481 F.2d 122, 129 (9th Cir.), *cert. denied, sub nom. Morgan v. Automobile Manufacturers' Ass'n*, 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973). Individuals who are separated from the violator by an intermediate party are usually considered "incidental," and therefore not within the area of the economy that the antitrust laws were designed to protect. *See, e.g., Solinger v. A&M Records, Inc., supra* at 1311.

Recently, the Ninth Circuit has indicated that, except in cases where the status of the plaintiff is such that he is not the direct target by operation of law, standing questions should be resolved by "a balancing of competing policy interests, principally the interest in effective enforcement of the antitrust laws against the interest in avoiding vexatious litigation and excessive liability." *Ostrofe v. H. S. Crocker Co.*, 670 F.2d 1378 (9th Cir. 1982); *see also California State Council of Carpenters v. Associated General Contractors*, 648 F.2d 527, 538 n.18 (9th Cir. 1980), *cert. granted,* —— U.S. ——, 102 S.Ct. 998, 71 L.Ed.2d 292 (1982) (dictum).

■ To the extent that *Ostrofe* represents the prevailing view in this circuit, the current status of the so-called "target area" test is uncertain. However, there is no doubt that an individual or a group of individuals that is only incidentally injured by an alleged antitrust violation has no standing under section 4 of the Clayton Act. *Ostrofe, supra* at 1385, n.13; *Program Engineering, Inc. v. Triangle Publications, Inc.*, 634 F.2d 1188, 1191–92 (9th Cir. 1980). Furthermore, notwithstanding any standing limitations linked to the "target area" test, certain parties lack *capacity* to sue for antitrust violations due to the nature of their relationship to the injured parties. *See, e.g., Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977); *Sherman v. British Leyland Motors, Ltd.*,

601 F.2d 429, 439–40 (9th Cir. 1979); *Vincel v. White Motor Corp.*, 521 F.2d 1113, 1119 (2d Cir. 1975).

## DISCUSSION

### 1. *Shareholder Standing*

The threshold issue presented by these motions is whether the plaintiff may, with one hand, set up a corporation as the prospective purchaser of a business, and with the other claim standing as the shareholder of that corporation. Established Ninth Circuit authority and common sense require that this question be answered in the negative.

■ It is well-settled in this circuit that a shareholder may not bring an action on his own behalf for antitrust injuries to the corporation. *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 439–40 (9th Cir. 1979); *Walker Distributing Co. v. Lucky Lager Brewing Co.*, 323 F.2d 1, 10 (9th Cir. 1963), *cert. denied*, 385 U.S. 976, 87 S.Ct. 507, 17 L.Ed.2d 438 (1966). This rule even applies to situations where the plaintiff is the sole shareholder of the injured corporation. In *Sherman, supra*, for example, the court held that the president and 100 percent shareholder of a corporation lacked standing to bring an antitrust action for the company in his individual capacity. The court reasoned that Sherman lacked capacity to bring suit on behalf of the corporation notwithstanding that he signed the franchise agreement on behalf of the company, personally guaranteed corporate obligations and was considered by the alleged violator as the indispensable party for performing services. *Id.* at 439.

Courts have consistently denied shareholders a primary right to sue for several reasons. First, courts have reasoned that the injury to the shareholder in the form of reduced share value or decreased earnings is too "incidental" to that suffered by the corporation. *Vincel v. White Motor Corp.*, 521 F.2d 1113, 1118 (2d Cir. 1975); *Ash v. International Business Machines, Inc.*, 353 F.2d 491, 493–94 (3d Cir. 1965), *cert. denied*, 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966); *Martens v. Barrett*, 245 F.2d 844,

846 (5th Cir. 1957). Second, other courts have concluded that permitting shareholders the right to sue for antitrust violations would subject defendants to multiple liability for the same alleged wrongs. *Loeb v. Eastman Kodak Co.*, 183 F. 704, 709 (3d Cir. 1910); *Rice v. Mobil Oil Co.*, 1980–2 Trade Cases ¶ 63,355 (W.D.Mo.1980); *see also Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc.*, 454 F.2d 1292, 1295 (2d Cir. 1971). Finally, courts have denied recovery, not on the basis of any "direct injury" or "target area" requirement, but based on the time-honored rule that shareholders lack *capacity* to bring a claim that belongs to the corporation itself. *Sherman, supra* at 439; *Vincel, supra* at 1119–20.

The adoption of an "interests" standing test in *Ostrofe v. H. S. Crocker Co.*, 670 F.2d 1378 (9th Cir. 1982) does not alter the rule that shareholders lack standing to sue for injuries inflicted upon the corporation. In *Ostrofe*, the court held that a former sales manager had standing to sue his former employer for antitrust violations when he was forced to resign because he refused to participate in a price fixing conspiracy between his employer and other manufacturers. Noting that standing questions should be resolved not by labels but by balancing competing policy interests, the court reasoned that permitting suits by discharged employees would further enforcement of the antitrust laws because the employees are the most proximate victims and often the only party capable of detecting the violation. *Id.* at 1385. Moreover, the court stated that there were no countervailing negative consequences which would deny standing such as a danger of duplicative recovery or a body of victims potentially so numerous as to create a flood of litigation. *Id.*

Application of the *Ostrofe* interests test to the shareholder antitrust case yields the conclusion that there is no standing as a matter of law. Not only is the corporation the primary victim of the alleged wrongdoing, but there is no reason why the shareholder is in any better position to detect or report the violation, particularly where the corporation itself is the injured party. Fur-

thermore, if each shareholder of a corporation or each shareholder of a prospective purchaser had standing to assert treble-damage claims, the courts would be flooded with a multiplicity of suits and the defendant would be subject to multiple liability for the same alleged wrongs.

Assuming arguendo that interests analysis did permit shareholder standing, the independent doctrine that only a corporation, and not its shareholders, may sue for injuries the corporation has suffered, deprives the shareholder of capacity to bring an antitrust lawsuit. The authorities are in agreement, even those advocating interests analysis, that in an antitrust context, as much as in any other corporate context, shareholders cannot bring a lawsuit that belongs in the first instance to the corporation. *See, e.g., Ostrofe, supra,* citing *Martens v. Barrett, supra* and *Loeb v. Eastman Kodak Co., supra,* at 1385, nn. 13, 17; Berger & Bernstein, An Analytical Framework for Antitrust Standing, 86 Yale L.J. 809, 814 (1977).

In addition to clear Ninth Circuit authority, common sense compels the conclusion that a potential shareholder of a prospective purchaser has no standing to bring an antitrust lawsuit on behalf of the corporate entity. When an individual invests in shares of a corporation, he secures the benefits of a separate identity for liability purposes. It would be incongruous to accord the legal privilege of third-party standing to a shareholder who refuses to assume any of the corporation's legal risks and obligations. As such, a shareholder, particularly one of a prospective purchaser, is merely affected by the "ripples of antitrust injury" and is only incidentally connected to the injuries inflicted upon the corporation. *John Lenore & Co. v. Olympia Brewing Co.,* 550 F.2d 495, 499 (9th Cir. 1977).

■ Application of the foregoing principles to the facts of this case demonstrates that Solinger lacks standing to bring this lawsuit. No parties dispute that Solinger was merely a prospective shareholder of the prospective purchaser. Further, Solinger

signed all documents on behalf of the corporation and assumed no personal liability, refusing even to act as a guarantor of the purchase of stock. Finally, Solinger and Dixon made the unfettered decision not to form JNS Enterprises. Accordingly, under well-established Ninth Circuit authority, Solinger, who alleges no direct injury to himself but only injuries resulting from his relationship to JNS as the prospective purchaser, has no standing as a matter of law.[1]

Plaintiff argues that, as a practical matter, he is the same entity as the unformed corporation, and as such should be granted standing to sue. This argument is flawed for several reasons. First, the Ninth Circuit rejected precisely the same contention in *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429 (9th Cir. 1979) where the court denied standing to a 100 percent shareholder who was the indispensable party in providing corporate services. The court's reasoned refusal to ignore the corporate entity applies with equal force to the instant case. While Solinger may have played an integral role in the attempted acquisition of IMS, his only possible injury would be the reduction in the value of his potential future stock holdings in the unformed corporation.

Second, Solinger is incorrect when he assumes that he is the equivalent of JNS Enterprises. Not only was he merely a co-stockholder of the unformed corporation, but the plaintiff expressly represented in the purchase agreements that he was signing on behalf of JNS and not in his individual capacity. Therefore, this case poses the precise risk of multiple recovery the antitrust standing rules were designed to prevent. Dixon JNS and IMS would all be potential plaintiffs and therefore it is extremely likely that, under these circumstances, defendants would be subjected to multiple treble damage liability for the same alleged wrongs.

Finally, recognizing shareholders and a prospective purchaser as equals for standing purposes contradicts common sense. It would be illogical to grant a prospective shareholder of a prospective purchaser greater rights than an actual shareholder of an existing corporation. Assuming there are no legal barriers to the formation of the entity with standing to sue, this court cannot allow a plaintiff, under the guise of the prospective purchaser theory, to bypass the traditional limitations on shareholders' rights.

Plaintiff also argues that shareholder standing rules do not apply to cases where the alleged violation prevented the formation of the targeted company. Whatever validity this argument might have in situations where the alleged wrongful conduct frustrated corporate formation as a matter of law,[2] the present case involves a situation where Solinger was neither legally nor factually prevented from forming the tar-

1. The Ninth Circuit apparently was not apprised of the fact that JNS was only going to purchase IMS' stock and as such was, at most, a prospective shareholder in a target company. Thus, under the holding in *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429 (1979), JNS itself would have no standing as a shareholder. Notwithstanding this conclusion, the fact that Solinger was a potential shareholder of a potential shareholder further removes him from the target of the alleged conspiracy.

2. In *Industrial Investment Development Corp. v. Mitsui & Co.*, 671 F.2d 876, 886–87 (5th Cir. 1982), for example, the court concluded that shareholders of an unformed corporation may have standing to sue if the "defendants' own actions are alleged to have aborted the entity which defendants claim has sole standing to sue." To the extent that this case, which emanates from a circuit that expressly acknowledges its disagreement with Ninth Circuit standing rules, is relevant to this court's decision, it is clearly distinguishable.

In *Industrial Investment*, the court dealt with a situation where the actions of the defendant prevented the creation of the injured corporation as a factual matter. Moreover the plaintiffs in that case, unlike the case at bar, were not with one hand using corporate status as a shield and with the other declining to use it as a sword. There, the defendant's conduct actually prevented the creation of the entity under Indonesian law and thus there could have been no more proximate victim. Accordingly, the Fifth Circuit would not deny standing to the potential shareholders who, through no inaction of their own, had failed to create the injured corporation. As such, the potential for double recovery, present in the instant case, was not raised.

geted company. If this court was to rule as Solinger would have it, the plaintiff would achieve greater standing by not forming JNS than he would get if he had taken the demonstrable steps of forming the proposed corporation. It ill-behooves a shareholder to seek refuge from liability by using the corporate nameplate and then to claim individual status for purposes of standing by claiming that the injured corporation never existed.[3] Therefore, this court finds plaintiff's arguments unpersuasive and rules that he lacks standing to bring this suit.

### 2. *Injury to Business or Property*

To have standing, Solinger must show that he has sustained injury to his business or property. In this case, the Ninth Circuit concluded "that a prospective purchaser who has taken *substantial demonstrable* steps to enter an industry and who is thwarted in that purpose by antitrust violations, has suffered a possible ascertainable loss." *Solinger v. A&M Records, Inc., supra* at 1309. The appellate court suggested that this court consider four factors when determining if Solinger himself was a prospective purchaser:

1. The background and experience of plaintiff in his prospective business.
2. Affirmative action on the part of plaintiff to engage in the proposed business.
3. The ability of plaintiff to finance the business and the purchase of equipment and facilities necessary to engage in the business.
4. The consummation of contracts by plaintiff.

*Id.* at 1310 quoting *Waldron v. British Petroleum Co.*, 231 F.Supp. 72, 81–82 (S.D.N.Y.1964).

After careful consideration of these factors, the undisputed facts in the record, and viewing all facts in the light most favorable to the plaintiff, the court concludes that

Solinger was not a prospective purchaser of IMS under the *Waldron* standard.

At the threshold, Solinger was not a prospective purchaser because he was not attempting to buy IMS on his own behalf. On the contrary, the prospective purchaser of IMS, if any, would be JNS the party named in the purchase agreement. *See Discussion supra* at pp. 6–11. Solinger took no steps on his own behalf to become a prospective purchaser and thus does not come within the scope of the Ninth Circuit's extension of antitrust standing to parties substantially related to the relevant industry.

Even assuming that Solinger's activities could be attributed to the corporation, JNS does not satisfy the prospective purchaser test. The facts of this case read like a litany of uncertainties. Solinger did not arrange for permanent lease space, employment contracts or a credit line. The purchase agreement was never executed and the corporate purchaser was never formed. Solinger failed to line up sources of supply or negotiate any union agreements. Moreover, the plaintiff did not extend the option contract in writing and it became a nullity long before the alleged violation occurred.

Solinger, therefore, failed to take any substantial demonstrable steps towards the purchase of IMS. Absent evidence of some affirmative steps to enter the industry, the limited inferential proof is insufficient as a matter of law.

### 3. *Causation*

In order to prove a loss to his business or property, the plaintiff must demonstrate that such loss was caused by the alleged antitrust violation. *Solinger v. A&M Records, Inc., supra* at 1310. In the present case, even assuming Solinger could prove that he personally was a prospective purchaser, plaintiff still has failed to set forth any facts showing that there is a genuine issue for trial on this question.

---

**3.** The problems inherent in permitting shareholders to choose corporate or individual status as fits their needs are particularly troublesome in the antitrust context. For example, in the present case, plaintiff's interpretation of the standing rules would not prevent suit by other shareholders (Dixon) or by the corporation named in the purchase agreement, if it is later formed.

Solinger admits that he decided not to purchase IMS in February of 1973 when A&M refused to guarantee continuing business with IMS for a lengthy period. Immediately after A&M's decision not to guarantee a relationship *in the future,* and without attempting to deal with Motown in any way, Solinger advised Zenith Distributing Company that he would not purchase the IMS assets.

It is clear from these facts that the alleged violation, i.e. the termination of IMS as distributor, occurred more than a month after Solinger had already decided to abandon his intent to purchase IMS. Since the facts, at most, demonstrate a violation directed against IMS, Solinger has failed to show causation as a matter of law.

### 4. *Substantive Antitrust Violations*

▮ The essence of the plaintiff's claims against the defendants is that they acted in concert to put IMS out of business. To show conspiracy, there must be sufficient evidence to infer either an express or implied agreement among the defendants to take joint action. *Hanson v. Shell Oil Co.,* 541 F.2d 1352 (9th Cir. 1976).

In the present case, plaintiff's only evidence of a conspiracy is the fact that both companies terminated IMS within a month of each other. Parallel action, however, is not sufficient to establish any kind of agreement. *Granddad Bread v. Continental Baking Co.,* 612 F.2d 1105 (9th Cir. 1979). Thus, plaintiff has failed to make a prima facie showing of conspiracy.

Summary judgment is appropriate if the defendant rebuts conspiracy allegations with probative evidence showing alternative, legitimate business reasons for the defendants' conduct and the plaintiff fails to come forward with specific factual support for its allegations. *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F.2d 665, 671 (9th Cir. 1980).

The defendants in this case have shown that the Eric Mainland Company made better offers to them at about the same time of the alleged violations in early 1973. In addition, the defendants demonstrated that IMS was ineffective in distributing records and that Mr. Solinger's performance in particular was less than satisfactory.

The plaintiff has not come forward with evidence disproving the assertion that the Eric Mainland Company won A&M and Motown over by making a superior offer. The plaintiff's failure to support his claim in the face of countervailing evidence requires that the defendants' motions for summary judgment be granted.

### SUMMARY JUDGMENTS IN ANTITRUST CASES

▮ In considering this motion, the court fully recognizes that summary judgment is disfavored in complex antitrust cases where motive and intent are at issue. *Poller v. Columbia Broadcasting Systems, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *A. H. Cox & Co. v. Star Machinery Co.,* 653 F.2d 1302, 1305 (9th Cir. 1981). Nevertheless, mere complexity alone is not a valid reason to deny summary judgment when there is no genuine issue of material fact, and the moving party clearly is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); *Program Engineering v. Triangle Publications,* 634 F.2d 1188, 1192–93 (9th Cir. 1980).

Particularly in antitrust cases where there are large, unresolved *legal* questions which are potentially dispositive of the lawsuit, motions for summary judgment represent the preferred method of disposition. One of the key roles summary judgment plays is reducing the potential for tremendous waste in both the court's time and the litigants' resources. *Zweig v. Hearst Corporation,* 521 F.2d 1129, 1135–36 (9th Cir.), *cert. denied,* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975).

In the present case, the court has carefully scrutinized all the facts in the record and analyzed the most recent authority on the questions of standing and antitrust injury. It is therefore with the greatest care that the court concludes that Solinger has no standing to bring this lawsuit and the plaintiff has failed to support his substantive allegations of antitrust violations.

IT IS SO ORDERED.