Dennis J. PISTOLL, Charles O. Scheutz, Centaur Trading Inc., Denis D. Alexander, Henry Kersting, as shareholders of First Savings and Loan Association for themselves and for others similarly situated, Investors Financial Corporation, First Savings and Loan Association of Hawaii and the Seville Corporation, Plaintiffs,

v.

Robert L. LYNCH, Sharon Lynch and Perpetual Storage Inc., Defendants.

Civ. No. 80–0161.

United States District Court, D. Hawaii.

Oct. 26, 1982.

Lawrence I. Weisman, Sparks, Md., Randolph R. Slaton, Honolulu, Hawaii, for plaintiffs.

James W. Boyle, Burnham H. Greeley, Susan P. Walker, Carlsmith, Carlsmith, Wichman & Case, Honolulu, Hawaii, for Robert Lynch, Sharon Lynch and Perpetual Storage.

Edward A. Jaffe, Honolulu, Hawaii, for Eugene Schaardt, M/Protec. Order.

## ORDER CONDITIONALLY CERTIFYING A CLASS ACTION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR JUDGMENT ON THE PLEADINGS

SPENCER WILLIAMS, District Judge.

### INTRODUCTION

This action arises under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j and rule 10b–5 promulgated thereunder. The gravamen of plaintiffs' complaint is that defendants failed to disclose material facts regarding the manner in which they conducted First Savings and Loan Association of Hawaii and the corporation's financial condition when members of the plaintiffs' class purchased the company's stock. By this action, plaintiffs seek to have their case certified as a class action under Fed.R.Civ.P. 23. Defendants oppose class certification and move to dismiss the complaint or in the alternative seek a judgment on the pleadings.

After a studied review of the excellent briefs and arguments of counsel, the affidavits and all other relevant matters in the record, the court certifies the proposed plaintiff class with certain modifications in terms of representation as discussed below. The court further rules that defendants' motions must be denied.

### FACTUAL BACKGROUND

Defendants Robert and Sharon Lynch held a controlling interest in First Savings and Loan Association of Hawaii and then later through a similar ownership interest in a holding company named First Financial. On March 20, 1978, the Lynches transferred their ownership interest to an alleged *alter ego,* defendant Perpetual Storage, Inc.

The actual origin of the disputes underlying this case may be traced to March 21, 1982. On that date, the Lynches allegedly caused Perpetual to sell all its stock to a group of approximately forty-two investors headed by plaintiffs Denis Alexander and Henry Kersting. Defendants contend that the sale of First Savings stock was only to Kersting and Alexander and that this fact was reflected in Paragraph 15 of the Stock Sale Agreement which stated:

15. *Third Parties.* Lynch, Seller and Buyers intend that this agreement shall not confer any benefit or create any right or cause of action in any person other than Lynch, Seller and Buyers; . . .

Plaintiffs, on the other hand, submit factual materials suggesting that defendants and/or their representative knew that the purchase was made on behalf of the other investors.

The complaint alleges *inter alia* that prior to March 21, 1978, defendant Robert Lynch was Chairman of the Board of First Savings and through his stock ownership controlled the directors and officers of the corporation. Plaintiffs allege that during that period First Savings was operated in an unsafe and unsound method and in violation of various state and federal laws and regulations. In addition, plaintiffs allege that defendants operated First Savings in a manner contrary to normal business practices in the same industry in Hawaii.

The primary thrust of plaintiffs' complaint is that defendants failed to inform them of the unsafe condition of the corporation and the continuing illegal and irregular practices of the corporate executives at the time of the sale of stock. Based thereon, plaintiffs seek a rescission of the sale or in the alternative damages for their lost investment and expected profits therefrom.

In response to these allegations, defendants contend that at least Kersting and Alexander were thoroughly advised of First Savings' financial condition at the time of the sale. Defendants point out that Alexander previously was a substantial shareholder and director of First Savings and by

March of 1978 held stock in the Seville Corporation, a large stockholder of First Savings. Defendants further argue that Kersting and Alexander received audited financial statements on First Savings.[1] In addition, Paragraph 13 of the Stock Sale Agreement stated:

13. *Examination.* Buyers have had the opportunity and have examined the books, records and assets of Association during the 30 days preceding the date of this Agreement.

The extent to which Kersting, Alexander and/or the investors they represented may be estopped from arguing that they were not informed as to the financial condition of the savings and loan is not the subject of defendants' present motion to dismiss.

Plaintiffs brought this case as a class action pursuant to Fed.R.Civ.P. 23 and now seek to have a class certified which consists of all persons who acquired stock in First Savings or Investors Financial Corporation[2] as a result of the transaction with defendants on March 21, 1978, and as a result of the tender offer made in connection therewith to outside stockholders of First Savings other than defendants.

The motion brought by plaintiffs seeks to have the court designate the following representative parties:

1. *Dennis J. Pistoll*—allegedly represented by Alexander and Kersting from whom he purchased 4,424 shares of stock in First Savings pursuant to the Stock Sale Agreement for $9.04 per share.

2. *Charles O. Scheutz*—allegedly represented by Alexander and Kersting from whom he purchased 4,424 shares of stock in First Savings pursuant to the Stock Sale Agreement for $9.04 per share.

3. *Centaur Trading, Inc.*—allegedly represented by Alexander and Kersting from whom it purchased 9,955 shares of stock in First Savings pursuant to the Stock Sale Agreement for $9.04 per share.

4. *Denis D. Alexander*—one of the parties named in the Stock Sale Agreement who purchased 27,654 shares of First Savings stock from defendants at $9.04 per share.

5. *Henry Kersting*—one of the parties named in the Stock Sale Agreement who, with Alexander, purchased 306,565 shares of First Savings stock from defendants at $9.04 per share allegedly on behalf of a group of over forty investors.

6. *The Seville Corporation*—a stockholder of First Savings before and after the Stock Sale Agreement.

7. *Investors Financial Corporation.*

8. *First Savings and Loan Association of Hawaii.*

DISCUSSION OF CLASS CERTIFICATION

■ Plaintiffs have moved for certification of a plaintiff class under Rule 23(a) and (b)(2) and Rule 23(a) and (b)(3).[3] In determining whether a matter should pro-

---

1. Plaintiffs argue in response that the record still is uncertain as to the degree of knowledge possessed by either Alexander or Kersting. Additionally, plaintiffs contend that even the accountants' audits did not contain all pertinent information because Part 505 of the general regulations of the Federal Home Loan Bank Board prohibited the disclosure of any of its examinations.

2. After the parties entered into the Stock Sale Agreement, the Alexander-Kersting group attempted to transfer the beneficial interest in those shares to plaintiff Investors Financial Corporation. This attempted transfer failed, however, because Investors Financial Corporation would have become a *de facto* savings and loan holding company within the meaning of 12 U.S.C. § 1703a(e)(1)(B) requiring the prior ap-

proval of the Federal Home Loan Bank Board. Plaintiffs joined Investors Financial Corporation as a plaintiff only in the event the court found it to be the beneficial owners of the First Savings shares. Under the facts as they presently appear, Investors Financial Corporation is not necessary to this litigation and therefore it is dismissed as a class representative without prejudice.

3. Plaintiffs intimate in their brief by quotation without reference to Rule 23(b)(1) that certification under that subdivision is also possible. Plaintiffs' Opening Brief p. 5. However, the rule in this circuit is that a subdivision (b)(1) class is inappropriate under these circumstances. *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1340 (9th Cir.1976).

ceed as a class action, the court must make findings concerning each essential element of the class action rule. *Price v. Lucky Stores, Inc.,* 501 F.2d 1177, 1179 (9th Cir. 1974). In that process, the burden of showing that the requirements for certifying a class action have been met lies with the party seeking certification. *Hochschuler v. G.D. Searle & Co.,* 82 F.R.D. 339, 343 (N.D. Ill.1978).

■ A review of the facts of this case [4] reveals that certain of the proffered representatives satisfy the requirements of Rule 23(a).

### 1. *Numerosity*

The proposed class meets the first requirement that its membership is so numerous that joinder is impracticable. There are over forty members in the class scattered throughout seven states. In light of the number of class members [5] and their geographical distribution, the court finds that their joinder is impracticable. *See Jordan v. County of Los Angeles,* 669 F.2d 1311, 1319 (9th Cir.1982); *Carr v. New York Stock Exchange, Inc.,* 414 F.Supp. 1292, 1304 (N.D.Cal.1976).

### 2. *Commonality*

Under subsection (a)(2) of the rule, plaintiffs must demonstrate that there are questions of law or fact common to the class. In the present case, it is obvious that many of the facts concerning the statements or omissions underlying the March 21, 1978 transaction are common to all class members. While the questions of law and fact

may differ with respect to the named purchasers (*see* discussion *infra*), the forty-two investors allegedly represented by Alexander and Kersting share virtually identical fact patterns concerning most of the events involved in the alleged scheme of nondisclosures. *See, e.g., Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

### 3. *Typicality*

The third requirement necessary to maintain a class action under Rule 23(a) is that the claims or defenses of the named representatives by typicality of the claims or defenses of the class. The typicality requirement is designed to assure that the named representatives' interests are aligned with those of the class. *Jordan v. County of Los Angeles, supra* at 1321. Therefore, the court must make a comparison of the claims and defenses of the representatives with the claims and defenses of the class.[6]

As the facts presently appear, the claims and defenses of the stock investors are typical because they stem from the same practices and are the subject of the same misrepresentations and omissions transmitted to them in similar ways. Proffered representatives Alexander and Kersting, however, are not typical because they are subject to unique defenses and may have possessed very different amounts of knowledge about the financial condition of First Savings. For example, since Alexander and Kersting signed the Stock Sale Agreement

---

**4.** The court need only inquire into the facts as presented in the pleadings and affidavits when those documents reveal that the requirements of Rule 23 have been met. *See generally Blackie v. Barrack,* 524 F.2d 891, 900–01 (9th Cir. 1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Wolfson v. Solomon,* 54 F.R.D. 584, 589–90 (S.D.N.Y.1972). Preliminary inquiry into the merits of a class action suit are, of course, unauthorized by Rule 23. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974).

**5.** Many courts have found that the numerosity requirement has been satisfied with class membership fewer in number than in the present

case. *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1319 (9th Cir.1982) (subclass of 39); *Afro American Patrolmen's League v. Duck,* 503 F.2d 294, 298 (6th Cir.1974) (35 class members); *Swanson v. American Consumer Industries,* 415 F.2d 1326 (7th Cir.1969) (40 class members); *Dale Electronics, Inc. v. R.C.L. Electronics, Inc.,* 53 F.R.D. 531 (D.N.H.1971) (13 class members).

**6.** To the extent that the typicality requirement merges with the adequacy of representation factor, the court will discuss the overlap in the following section. *See Nguyen Da Yen v. Kissinger,* 70 F.R.D. 656, 664–65 (N.D.Cal.1976).

they may both be subject to different estoppel defenses based on Paragraphs 13 and 15 of that contract. Moreover, Alexander's connection with First Savings and its predecessor *before* the execution of the agreement appears to be radically different than that of other class members. *See, e.g., Lewis v. Johnson,* 92 F.R.D. 758, 760 (E.D. N.Y.1981).

Similarly, the claims of proffered representatives Seville Corporation and First Savings and Loan Association of Hawaii are not typical of the other members of the putative class. In fact, there is no evidence presently before the court that either would even qualify as a member of a class of all persons who acquired stock in First Savings *as a result* of the March 21, 1978 transaction. The Seville Corporation apparently held stock both before and after the transaction and First Savings appears to be a nominal plaintiff whose prosecution of this action has not been properly approved. *See* Judge King's decision in Civil No. 80–0090.

### 4. *Adequacy of Representation*

Rule 23(a)(4) requires that "the representative parties ... fairly and adequately protect the interests of the class." In determining the adequacy of class representation, it should be considered whether any antagonism exists between the interests of the plaintiffs and those of the remainder of the class. 7 Wright and Miller, *Federal Practice and Procedure* §§ 1765–69 at 615–57.

In the present case, plaintiffs Alexander and Kersting cannot adequately represent the class because they have interests antagonistic to other members of the class. First, since Pistoll, Scheutz and Centaur purchased their shares from Alexander and Kersting, there is a distinct possibility that these individuals and the group of investors they represent could well have a cause of action for any failure to properly investigate the financial condition of First Savings.[7] Second, the fact that Alexander and Kersting may have had access to different information than the investor group may cause these representatives to minimize facts known to them. The record reflects the potential that both of these parties named as purchasers in the Stock Sale Agreement may have been or should have been aware of the alleged fraud. *Cf. Hochschuler v. G.D. Searle & Co.,* 82 F.R.D. 339, 348 (N.D.Ill.1978) (court found adequate representation because no proof of any awareness of fraud).

Accordingly, the court finds that only Pistoll, Scheutz and Centaur Trading Inc. are proper representatives for the purported class.[8]

### *Rule 23(b)(2)*

This action seeks injunctive relief in the form of rescission pursuant to Rule 23(b)(2). This subdivision provides for a class action where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

In the present action, plaintiffs have alleged that the sale of First Savings stock was accomplished illegally, in violation of the Federal Securities laws. Plaintiffs seek, in the alternative to money damages, rescission of the sale. It is plain, therefore, that plaintiffs' allegations as they relate to the forty-two investors identify actions taken by defendants towards the investors as a whole. While it is presently disputed whether defendants were aware of the in-

---

**7.** In fact, it appears that Alexander and Kersting have been named as defendants in the representative actions pending in state court.

**8.** Counsel for plaintiffs indicated at oral argument that he could get affidavits from the other investors representing a lack of a conflict with Alexander and Kersting. Even if it was possible for a party to waive a possible conflict of interest, *Cf. Sapienza v. New York News, Inc.,*

481 F.Supp. 676, 680 (S.D.N.Y.1979) with *Unified Sewerage Agency v. Jelco Inc.,* 646 F.2d 1339, 1348–50 (9th Cir.1981), the court has an independent obligation to protect the unnamed members of the class and prohibit antagonistic representation. The requirements of due process mandate that even potentially antagonistic interests must be prevented. *Nguyen Da Yen v. Kissinger,* 70 F.R.D. 656, 666 (N.D.Cal.1976).

vestors' existence, there is support in the record to support plaintiffs' theory that defendants owed them a duty to disclose material information regarding the stock purchase. Therefore this action is properly certified as to the named representatives pursuant to Rule 23(b)(2). *See Contract Buyers League v. F & F Investment,* 48 F.R.D. 7, 13–14 (N.D.Ill.1969).[9]

At this stage of the litigation, a Rule 23(b)(2) class is appropriately certified on a conditional basis. This is especially true in light of the rule that early determinations of class status should govern as a general rule. *Grad v. Memorex Corp.,* 61 F.R.D. 88, 94 (N.D.Cal.1973). If facts should later develop by which plaintiffs elect to forego their potential right to rescission or which indicate that that remedy is inapposite, the court may order the class decertified under this subdivision.

*Rule 23(b)(3)*

Under Rule 23(b)(3) questions of law and fact common to members of the class must predominate over questions affecting individual members, and the class action must be superior in terms of fairness and efficiency to other means of litigation.

### 1. *Predominance*

The foremost difficulty in Rule 23(b)(3) class actions in the securities fraud context is whether or not individual issues will subsume the common issues. The primary question, therefore, is whether the class is brought together "more by a mutual interest in the settlement of common questions than it is divided by the individual members' interest in the matters peculiar to

them." 3B J. Moore, *Federal Practice* ¶ 23.45[2] (2d ed. 1980).[10]

In the present case, it is clear that the class of the forty-two investors is seeking to remedy a common legal grievance which arises out of the same nucleus of operative facts. It is now well-settled in this circuit that in cases where members of a class are, according to plaintiffs' allegations, subject to the same misrepresentations and omissions with respect to the sale of stock, a Rule 23(b)(3) class action is appropriate. *See, e.g., Arthur Young & Co. v. U.S. Dist. Court,* 549 F.2d 686 (9th Cir. 1977); *Cameron v. E.M. Adams & Co.,* 547 F.2d 473 (9th Cir.1976); *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Harris v. Palm Springs Alpine Estates,* 329 F.2d 909 (9th Cir.1964).

### 2. *Superiority*

In light of the above and considering the criteria articulated in rule 23(b)(3), the court finds that a class action is a superior mode of conducting this suit. The number of claimants renders joinder, intervention and test case impracticable. Moreover, the pendency of other suits in different procedural contexts neither reflects a desire by other class members to pursue individual actions nor does it minimize the need for class treatment in the present case. *Hochschuler v. G.D. Searle & Co.,* 82 F.R.D. 339, 350 (N.D.Ill.1978).

## DISCUSSION OF MOTION TO DISMISS

### 1. *Shareholders' Class Action*

Defendants argue that this representative action must be dismissed because

---

**9.** The court is aware that Rule 23(b)(2) certification is inappropriate when the final relief relates exclusively to money damages. Advisory Committee's Notes to Rule 23, 39 F.R.D. 69, 102 (1966). In this case, however, plaintiffs are seeking equitable rescission, a right that might be lost on a class basis if it is not pleaded at this time.

**10.** Defendants argue that individual issues predominate and submit the testimony of an alleged class member, Richard Edwards, who

stated that he had not been defrauded by Mr. Lynch. Notwithstanding the questionable relevance of this single individual's testimony, *see Moss v. Lane Co.,* 50 F.R.D. 122, 125–26 (W.D. Va.1970), Mr. Edward's objections go to the validity of the suit itself. If he is correct, plaintiffs will not recover and if he is not then the class certification should be unaffected. Clearly, an inquiry into the former would be inappropriate at this stage of the litigation. *See* note 4 *supra.*

these plaintiffs do not satisfy the requirements imposed by Fed.R.Civ.P. 23.1 for derivative actions.[11] This argument must be rejected for the simple reason that this class action is based on plaintiffs' individual rights as prospective purchasers not on any rights "derived" as shareholders of First Savings.

It has long been settled that shareholders may bring a class action directly based upon their individual rights of action under Fed.R.Civ.P. 23. *J.I. Case Co. v. Borak,* 377 U.S. 426, 432, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964); *Yamamoto v. Omiya,* 564 F.2d 1319, 1325–26 (9th Cir.1977). The rules normally applicable to shareholder derivative actions, therefore, are inapposite to a case brought to remedy alleged wrongs against plaintiffs in their individual capacity.[12]

In the present case, plaintiffs are suing on behalf of themselves and others for injuries suffered in their capacity as *purchasers* of stock not as present, existing shareholders.[13] In other words, plaintiffs do not seek recovery for mismanagement by directors but rather for defendants' alleged failure to disclose the effect of this conduct on the financial condition of the corporation at the time of the stock purchase.

If the court was to accept defendants' position, Rule 23.1 would eliminate many securities fraud class actions that involve misrepresentations concerning the corporation's financial condition. As such, plaintiffs, such as those in the present suit,

would be divested of their rights under the federal securities laws even though they were not shareholders at the time of the acts in question. This is clearly not the present state of the law and, therefore, defendants' motion to dismiss on this ground must be denied.

### 2. *Collateral Estoppel*

Defendants further argue that the issues raised herein have been resolved in other cases and that this action should be dismissed based on the doctrine of collateral estoppel.[14] A close examination of the related cases, however, reveals that the requirements of this doctrine have not been met in this case.

■ Collateral estoppel may only be applied to issues that were actually litigated in a previous case involving the same parties. *Cream Top Creamery v. Dean Milk Co.,* 383 F.2d 358 (6th Cir.1967). The party asserting the defense has the burden of proving that the precise question was raised and finally determined on the merits in the first action. 1B J. Moore, *Federal Practice* ¶ 0.408[1], pp. 954–55 (2d ed. 1980).

■ Defendants have been unable to identify any related case where the precise issues raised in this litigation were finally resolved on the merits against the plaintiffs herein. In the federal action, Civil No. 80–0090, Judge King decided the limited issue of who had standing to sue for inju-

---

11. Fed.R.Civ.P. 23.1 provides in pertinent part: In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains .... The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort....

12. In fact, the *Yamamoto* court held that a Rule 23 class action may be certified even if a derivative suit will, at the same time, provide similar and adequate relief. 564 F.2d at 1326.

13. For a discussion of the limitations on shareholder suits see *Solinger v. A & M Records, Inc.,* 538 F.Supp. 402, 405–06 (N.D.Cal.1982).

14. Since defendants presented matters outside the complaint, the motion to dismiss based on collateral estoppel must be treated as one for summary judgment. *Aronsen v. Crown Zellerbach,* 662 F.2d 584, 591 (9th Cir.1981).

ries to the corporation. In a well-reasoned order, the court there held that any action for harm done to First Savings was an action which lay with the receiver. Collateral estoppel based on that decision is inappropriate because the present plaintiffs were not parties to that action nor are they suing for injuries done to the corporation.

Similarly, the state court order dismissing a related case does not justify application of collateral estoppel on the present state of the record.[15] It is altogether unclear from Judge Wakatsuki's dismissal order in the state court action, Civil No. 61935, what issues, if any, were finally resolved on the merits. The order does not state the basis upon which it was made nor does it appear to involve a dismissal of all allegations of a certified class. On the contrary, the order was entered without prejudice and defendants' own brief intimates that the action may still be pending in state court. Defendants' Brief pp. 29, 11, 13–14.[16]

CONCLUSION

This action involves many common issues for a comparatively small number of shareholders. As such, it is the type of case that is particularly well suited for class treatment. Moreover, there are no reasons based on the present state of the record why defendants' motion to dismiss should be granted.

Accordingly,

IT IS HEREBY ORDERED that this action shall proceed conditionally as a class action pursuant to Fed.R.Civ.P. 23(b)(2) and 23(b)(3), the class comprising all persons who acquired stock in First Savings or Investors Financial Corporation as a result of the transaction with defendants on March 21, 1978, and as a result of the tender offer made in connection therewith to outside stockholders of First Savings other than defendants. The court will consider creating subclasses under Fed.R.Civ.P. 23(c)(4) if necessary or in vacating its certification order if facts develop indicating class relief is inappropriate.

IT IS FURTHER ORDERED that the action as to plaintiffs Alexander and Kersting is severed from the class claim. Fed.R. Civ.P. 42(b).

IT IS FURTHER ORDERED that this order shall be subject to alteration or amendment before the decision on the merits as authorized by Fed.R.Civ.P. 23(c)(1). Any proposed alteration or amendment desired by a party shall be brought before the court as soon as practicable following discovery of the facts believed to warrant it.

IT IS FURTHER ORDERED that counsel for plaintiffs prepare and submit to the court thirty days from the date hereof a proposed form of notice to be sent to members of the class.

IT IS FURTHER ORDERED that defendants' Motion to Dismiss be, and hereby is, DENIED.

IT IS SO ORDERED.

---

15. While defendants do attach a copy of the complaint in that action to their counsel's affidavit, they do not attach copies of the moving papers or a transcript of the hearing in order to demonstrate the actual basis of Judge Wakatsuki's general dismissal order. *See Cream Top Creamery v. Dean Milk Co.,* 383 F.2d 358 (6th Cir.1967).

16. A federal court usually will not dismiss an action due to a similar action pending in state court. The general rule is that "[e]ach court is free to proceed in its own way and in its own time, without reference to the proceeding in the other court." *Graziano v. Pennell,* 371 F.2d 761, 764 (2d Cir.1967).