OSCAR GRUSS & SON, on its own behalf and on behalf of all persons similarly situated, Plaintiffs,

v.

GEON INDUSTRIES, INC. and Arthur Andersen & Co., Defendants.

No. 75 Civ. 5276 (GLG).

United States District Court, S. D. New York.

July 28, 1977.

Kass, Goodkind, Wechsler & Gerstein, New York City, for plaintiffs; by Stuart D. Wechsler, Robert S. Churchill, New York City, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant, Geon Industries, Inc.; by Jay G. Strum, New York City, of counsel.

Breed, Abbott & Morgan, New York City, for defendant, Arthur Andersen & Co.; by George F. Vary, New York City, of counsel.

GOETTEL, District Judge.

Oscar Gruss & Son ("Gruss"), a securities broker-dealer principally located in New York City, undertook a series of purchases of Geon Industries, Inc. ("Geon") common stock after public announcement on December 20, 1973 of a takeover bid by Burmah Oil Company ("Burmah") for Geon. Burmah's initial offer was to purchase the assets of Geon for the equivalent of $16.80 per share of Geon common stock. While this initial offer was pending, Gruss purchased 1,000 shares of Geon common at 13⅛. Plaintiff acknowledges that the transaction was for arbitrage purposes; meaning that the plaintiff bought in anticipation of a profit on the takeover and purchase by Burmah.

On April 30, 1974 Geon announced that Burmah's offer was being reduced to the equivalent of $11 a share due to earnings below expectation by Geon in 1973. After this announcement Gruss, in a series of purchases, acquired 14,500 more shares of Geon common at an aggregate cost of $143,212.50. (Again, these purchases were acknowledged to be for arbitrage purposes.)

On July 12, 1974 Geon announced that Burmah had withdrawn its revised offer and had terminated its takeover bid. The reason given for this action was that litigation had been commenced against Geon by

former owners of a Geon subsidiary and Burmah did not want to purchase a company in litigation. When trading of Geon resumed, Gruss sold its entire holding of Geon stock. During the period July 31 through August 8, 1974 Gruss sold all its Geon stock and suffered a loss of $109,000. Gruss later (on November 15, 1974) purchased 2,000 additional shares of Geon which it held until July 18, 1975, when the shares were sold at a profit of $1,849.87.

On October 20, 1975, more than three months after Gruss had sold its last Geon holdings (and more than fourteen months after it incurred its losses), Geon announced that its earnings for the years 1971 through 1973 had been erroneously overstated, from a proper accounting standpoint, in an aggregate amount of $484,000. Four days later, Gruss commenced this action against Geon and its independent auditors, Arthur Andersen & Co.

The complaint alleges a single cause of action based on Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and S.E.C. Rule 10b–5, 17 C.F.R. § 240.10b–5, alleging that the earnings statements of Geon for 1971 through 1973 were materially false and misleading and caused damage to plaintiff and all others who purchased Geon stock during the period from January 1, 1971 through October 20, 1975 in reliance thereon. On October 1, 1976, almost a year after the action was commenced, plaintiff first moved for class certification under Fed.R.Civ.P. 23. Plaintiff urges a class of all purchasers from January 1, 1971 through October 20, 1975. Defendant, not surprisingly, has opposed this motion and has cross-moved for summary judgment.

Plaintiff avers that since Geon was a widely traded issue, with over two million shares outstanding, the class well satisfies the requirement that it be too numerous to make use of joinder of all parties. As to the requirement of commonality of factual or legal issues, plaintiff urges that the occurrence of the misstatements, their materiality and the causation of injury, as well as reliance, are all common issues of fact.

While conceding that the issue of damages will be individual to all plaintiffs, plaintiff argues that the existence of individual issues as to damages will not bar class certification citing *Kronenberg v. Governor Clinton Hotel*, 41 F.R.D. 42 (S.D.N.Y.1966). Finally, plaintiff makes the customary claims concerning his counsel's extensive experience and expertise in securities law and class action litigation, and contends that it will be a fair and adequate representative for the class. (While no particular point is made of it, the Court is aware that Gruss has commenced other similar class actions with respect to other securities issues that had adverse histories.)

In opposition to these Rule 23(a) arguments the defendant contests the typicality of plaintiff's claim, the existence of common questions of law or fact and the adequacy of plaintiff as a representative of the class sought. In addition, defendant moves for summary judgment arguing that there is lacking the element of causation in plaintiff's claim since the losses suffered were caused by arbitrage trading and not by erroneous earnings statements. Defendant also argues that the complaint alleges no scienter and therefore fails to state a cause of action upon which relief may be granted. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). As a final point against class certification defendants point to the plaintiff's failure to comply promptly with local Civil Rule 11A requiring that motions for class status be made within sixty days.

■ On a motion for summary judgment the court must view the facts in the light most favorable to the party opposing the motion. *United States v. Diebold*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The court cannot try issues of fact but merely must determine if such issues of fact exist. *Empire Electronics Co. v. United States*, 311 F.2d 175, 179 (2d Cir. 1962). If there are issues of fact, the summary judgment motion must be denied. *Empire Electronics Co., supra*. Defendant's motion in this case must be denied because the question of causation may be tenuous, but it remains a

question of fact. It is clear that Gruss' losses resulted directly from the withdrawal of the Burmah bid and not the later disclosure of accounting discrepancies. But whether the Burmah bid, or its withdrawal, were caused by the earnings overstatement situation, are matters warranting extensive discovery. Whether or not plaintiff can prove causation on the unique set of facts presented is a question for trial, not for a summary judgment motion.

Turning to the motion for class certification, defendant's last objection is that the plaintiff violated local Civil Rule 11A by failing to make the motion within sixty days of commencement of the action. Plaintiff argues that necessary discovery delayed this motion for ten months. While we do not find this argument convincing, enforcement of Rule 11A has not always involved a refusal to entertain the Rule 23 motion. *Compare Walker v. Columbia University*, 62 F.R.D. 63 (S.D.N.Y.1973) with *Gilinsky v. Columbia University*, 62 F.R.D. 178, 180 (S.D.N.Y.1974). The Court will not mechanically apply Rule 11A to deny consideration of the Rule 23 motion. Rather, it will take the delay into account as one factor to be considered in evaluating plaintiff's satisfaction of Rule 23(a)(4).

■ Rule 23 establishes four prerequisites to a class action. The class must be so numerous as to make joinder of all members impracticable. Rule 23(a)(1). There must be common issues of law or fact. Rule 23(a)(2). The representative plaintiff's claim must be typical of those of the class, Rule 23(a)(3); and the named party must be a fair and adequate representative of the interests of the class. Rule 23(a)(4). In shaping a class for certification, the Court has the responsibility to define the class in such a manner as will render the action manageable. *Baxter v. Savannah Sugar Refining Corp.*, 46 F.R.D. 56 (D.Ga. 1969).

■ Plaintiff has clearly met the Rule 23(a)(1) and (2) prerequisites. Whatever the extent of the class, be it all purchasers or only those who purchased during the pendency of the takeover bid, the class is too numerous to reach by joinder. Defendant has hardly contested this point and the Court finds the plaintiff to have met the Rule 23(a)(1) prerequisite. As to commonality of factual issues, the issuance of the misstatements, their materiality and the effect of the misstatements on the market price of the Geon stock are all issues of fact common to Geon stockholders. With such issues common to the entire class it would meet the requirement of Rule 23(a)(2) notwithstanding the existence of disparate questions as to reliance and damages. *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

When we reach typicality, however, the question becomes more difficult. Plaintiff was clearly purchasing Geon stock for arbitrage purposes. Moreover, plaintiff made investments in Geon *after* the takeover bid was withdrawn, but before the October 1975 disclosure, and made a profit thereon. Plaintiff occupies a most untypical position.

Plaintiff argues that the misrepresentations as to earnings may well be one factor which influenced Burmah to make a takeover bid for Geon, which offer may have been withdrawn, in part, because of Burmah's private discovery of the erroneous public information as to earnings. Plaintiff argues that the issuance of false earnings statements, whether it caused direct investor reliance or plaintiff's reliance on Burmah's reliance, is a "common course of conduct," *Fischer v. Kletz*, 41 F.R.D. 377, 381 (S.D.N.Y.1966), running through all potential class members' claims and sufficient to meet the typicality requirements of Rule 23(a)(3). Defendant counters that plaintiff's position as an arbitrage purchaser is such a central and unique fact as to render its claim *sui generis*. Defendant further argues that, since plaintiff sold all its stock before the public announcement of the earnings correction, plaintiff is really a beneficiary of the alleged fraud and is set apart from the post-disclosure sellers.

Rule 23(a)(3)'s typicality requirement is really a requirement that the representative plaintiff's claim not be antagonistic to

those available to the remainder of the class. *Cannon v. Texas Gulf Sulphur*, 47 F.R.D. 60 (S.D.N.Y.1969). Defendant's opposition is not really centered on any such antagonism (at least when compared to other pre-disclosure sellers) but is more accurately, an observation of the logical atypicality of plaintiff's transaction when compared to the ordinary investment situation. Plaintiff's claim is not based upon its direct reliance upon Geon's actions and representations. Rather it has alleged that it relied upon the actions of Burmah as its investment guide and that this resulted in reliance and causation one step removed. While this theory of recovery may be atypical of the remainder of any class' traditional 10b–5 claims, the plaintiff has also alleged such a traditional 10b–5 claim and, assuming one exists, such a claim and the alternative theory discussed above are not antagonistic. Therefore, the plaintiff can, at least as to some purchasers, meet the requirements of Rule 23(a)(3).

Rule 23(a)(4) requires that the representative of the class fairly and adequately protect its interests. The Court is not persuaded that this prerequisite has been met as to the class that the plaintiff seeks to represent. As noted earlier, the plaintiffs have waited nearly a year to take a step that a local Rule mandates be taken within sixty days of the commencement of the action. This factor weighs against plaintiff's adequacy, notwithstanding plaintiff's counsel's represented experience and knowledge. More importantly, the plaintiff's unique position presents unusual issues of law and fact. The atypical nature of the third-party reliance and causation questions will require counsel to develop a case wholly apart from the remainder of the 10b–5 claims. Plaintiff seeks not a class of arbitrage purchasers who sold prior to disclosure of the erroneous earnings information but rather seeks to represent all purchasers of the Geon stock during the period these statements had an effect on the marketplace. This plaintiff has little in common with pre-Burmah bid purchasers or with post-disclosure sellers.

■ Only those who purchased Geon common stock during the pendency of the Burmah takeover bid (December 20, 1973 to July 12, 1974) and who also sold such stock before the Geon accounting announcement of October 20, 1975 will be adequately represented by the named plaintiff. This more narrowly defined class will allow plaintiff to pursue both the traditional 10b–5 claims of similarly situated Geon traders and will allow plaintiff to test his third-party reliance theory on behalf of all those who acted on a similar Burmah-following basis. It is only as to such a class that the Court finds plaintiff to have met the requirements of Rule 23(a)(4).

Having limited the class of plaintiffs to those purchasing Geon during the pendency of the Burmah takeover bid will also satisfy the requirements of Rule 23(b)(3). As to this class, the common, although unique, issues of fact and law as to both the basic 10b–5 claim and the Burmah-based reliance claim predominate. In addition, under the provisions of Rule 23(c)(4)(B) the Court will subdivide the class into those who purchased during the pendency of the Burmah takeover bid, but before the downward revision of the per share price from $16.80 to $11, and those who purchased during the pendency of the takeover bid, but after this downward revision.

■ Finally, the defendant has moved to dismiss based upon plaintiff's failure to allege scienter with satisfactory particularity. Mere conclusory allegations of fraud in a pleading are insufficient to meet the requirement of Fed.R.Civ.P. 9(b). *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir. 1971). A complaint should identify the particular facts or circumstances upon which the plaintiff's allegation of fraud is based in order to meet the requirement of Rule 9(b). *Felton v. Walston & Co.*, 508 F.2d 577 (2d Cir. 1974). *See Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972). Clearly as to Andersen, and arguably as to Geon as well, the plaintiff's complaint does not allege the element of *scienter* with the required specificity. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47

L.Ed.2d 668 (1976). Under Rule 15(a), and in light of the fact that this action was commenced prior to the Supreme Court's ruling in *Hochfelder*, the Court will allow the plaintiff thirty days to file an amended complaint.

SO ORDERED.