**Lucy S. BEEBE, individually and on behalf of all other common shareholders of Pacific Realty Trust, Plaintiff,**

v.

**PACIFIC REALTY TRUST, et al., Defendants.**

**Civ. No. 83–228–PA.**

United States District Court, D. Oregon.

Aug. 16, 1983.

Henry Kantor, Henry A. Carey, P.C., John D. Ryan, John D. Ryan, P.C., Roger G. Tilbury, Portland, Or., for plaintiff.

Barnes H. Ellis, Gregory R. Mowe, Peter R. Jarvis, Susan K. Eggum, Stoel, Rives, Boley, Fraser & Wyse, Portland, Or., for defendants Pacific Trust Realty, Peter F. Bechen, James F. Kavanagh, Merritt W. Truax, William W. Wyse and Stoel, Rives, Boley, Fraser & Wyse.

Garr M. King, Kennedy, King, Zimmer & O'Malley, Portland, Or., for defendant Alex Browne & Sons.

Hugh Steven Wilson, Susan E. Nash, Latham & Watkins, Los Angeles, Cal., Verne W. Newcomb, Wayne D. Landsverk, Newcomb, Sabin, Meyer & Schwartz, Portland, Or., for defendants Kohlberg, Kravis, Roberts & Co., KKR Associates, and PRT Holding Co.

Donald W. McEwen, McEwen, Newman, Hanna & Gisvold, Portland, Or., for defendant Tonkon, Torp, Galen, Marmaduke and Booth.

## OPINION AND ORDER

PANNER, District Judge.

Plaintiff seeks class certification of a securities fraud action. Defendants oppose the motion generally, and offer specific arguments for narrowly defining any class which is certified. I GRANT the motion for class certification with certain refinements.

## BACKGROUND

This is an action brought by a former shareholder of Pacific Realty Trust ("PacTrust") individually and on behalf of all other similarly situated current and former PacTrust common shareholders. All of the defendants are alleged to have been involved in the sale of PacTrust stock to Kohlberg, Kravis, Roberts & Co. ("KKR") and other defendants. Plaintiff asserts the Proxy Statement issued in connection with the transaction contains misstatements and omissions of material facts.

The plaintiff is a resident of Oregon and a former holder of 300 shares of PacTrust common stock.

Defendant PacTrust is a business trust organized in 1972 under Oregon law. During all times material to this action, PacTrust was engaged in interstate commerce as a real estate investment trust ("REIT") qualified under the Internal Revenue Code of 1954. Its investments were equity investments in industrial parks and buildings, and office and commercial properties in Oregon and Washington. PacTrust's common shares were listed on the American Stock Exchange, and most or all of the common stock is currently owned by defendant PRT Holding Company.

Defendants Peter Bechen, James Kavanagh, Merritt Truax, and William Wyse are PacTrust trustees. Bechen is president and chief executive officer, Kavanagh is chairman of the board, and Wyse is secretary. All are current or former PacTrust shareholders. Wyse is also a partner in defendant Stoel, Rives, Boley, Fraser & Wyse ("Stoel, Rives").

Defendant Alex. Brown & Sons ("Alex. Brown") is a partnership organized under Maryland law. It is an investment banking firm and evaluates securities in the real estate industry.

Defendant KKR is a partnership organized under New York law. It is a private

investment firm which has acquired business interests in Oregon.

Defendant PRT Holding Company ("Holding") is a newly-formed corporation organized under Delaware law. Plaintiff alleges all of Holding's issued and outstanding common stock is currently owned by defendant KKR.

Defendants Stoel, Rives and Tonkon, Torp. Galen, Marmaduke & Booth ("Tonkon, Torp") are law partnerships organized under Oregon law.

The First Amended and Supplemental Complaint ("Complaint") contains four counts:

(1) Violations of federal securities laws,

(2) Violations of state securities laws,

(3) Common law fraud, and

(4) Negligent misrepresentation.

The Complaint alleges the Proxy Statement contains at least twenty-nine misleading statements and twelve omissions, and that such misstatements and omissions violate §§ 10(b), 14(e), 18(a), and 20(a) of the Securities Exchange Act of 1934 and Regulations 10b–5, 14a–9, and 14c–6 promulgated thereunder.

■ For purposes of a motion for class certification, I am required to accept plaintiff's allegations as true. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). The class representative need not demonstrate a likelihood of success on the merits to maintain her class action. *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1321 (9th Cir.1982), *vacated on other grounds,* —— U.S. ——, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982).

Jurisdiction over the federal claims is asserted under § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. Jurisdiction over the state claims is asserted pursuant to well-established principles of pendent jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

## DISCUSSION

Federal Rule of Civil Procedure 23(a) requires the plaintiff to satisfy all of the following requirements before a class can be certified: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the representative party must be typical of the claims of the class; and (4) the representative party must fairly and adequately protect the interests of the class. In addition, plaintiff must satisfy one of the elements of Rule 23(b). *Blake v. Arnett,* 663 F.2d 906, 912 (9th Cir.1981); *E.E.O.C. v. General Tel. Co. of the Northwest,* 599 F.2d 322, 327 (9th Cir.1979), *aff'd,* 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

■ Here, plaintiff seeks to certify a class under Rule 23(b)(3) which requires the court find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *See McFarland v. Memorex Corp.,* 96 F.R.D. 357, 361 (N.D.Cal.1982). In determining whether a matter should proceed as a class action, the court must make findings concerning each essential element of the class action rule. *Price v. Lucky Stores, Inc.,* 501 F.2d 1177, 1179 (9th Cir. 1974); *Pistoll v. Lynch,* 96 F.R.D. 22, 26 (D.Haw.1982).

## I. NUMEROSITY.

### A. *Standards.*

A class must be so numerous that joinder of all members is impracticable. Fed.R. Civ.P. 23(a)(1).

### B. *Application.*

■ As of January 10, 1983, there were approximately 1,487 record holders of Pac-Trust common stock. I find that plaintiff meets the numerosity requirement.

## II. COMMONALITY.

### A. *Standards.*

There must be questions of law or fact common to the class. Fed.R.Civ.P. 23(a)(2).

The Rule does not require that every question of law or fact be common to every member of the class. *Jordan,* 669 F.2d at 1320. There must be at least one issue the resolution of which will affect all or a significant number of the putative class members. *Stewart v. Winter,* 669 F.2d 328, 335 (5th Cir.1982). *See also Resnick v. American Dental Ass'n,* 90 F.R.D. 530, 539 (N.D. Ill.1981).

### B. *Application.*

In the Ninth Circuit, where members of a class are subject to the same misrepresentations and omissions with respect to the sale of stock, a class action is appropriate. *Pistoll,* 96 F.R.D. at 28.

The matter cannot rest with that general statement, however, for difficult problems of materiality, reliance and causation lurk in this case. Where plaintiff alleges violations of different provisions of the federal securities laws as well as of state law, it is useful for me to examine, at least on a preliminary basis, the legal elements of plaintiff's claims to determine whether the commonality requirement is met. Subjective reliance, for example, might require proof of individual rather than common facts, even though only one document (the Proxy Statement) is alleged to be false.

### 1. *Section 14(e).*

Section 14(e) of the Securities Exchange Act of 1934, 48 Stat. 895, 15 U.S.C. § 78n(e), provides:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders,

or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The [Securities and Exchange] Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.

Securities and Exchange Commission Rule 14a–9, 17 C.F.R. § 240.14a–9, provides:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . .

The Supreme Court does not require under this provision a showing of individual, subjective reliance in addition to the materiality of misstatements and omissions in a proxy statement. *Mills v. Electric Auto-Lite Company,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

Plaintiffs in *Mills* represented a class of minority shareholders of Electric Auto-Lite Company. They sought to set aside a merger of Auto-Lite and Mergenthaler Linotype Company, and other appropriate relief for an alleged violation of § 14(a) and Rule 14a–9.[1] Plaintiffs claimed that the proxy statement sent by company management recommending merger concealed the fact that all of the Auto-Lite directors were under the control of Mergenthaler and thus were not in a position to render an impartial opinion on the desirability of the merger. The alleged wrongdoers needed the

---

1. Section 14(a), 15 U.S.C. § 78n(a), provides simply that it shall be unlawful for any person to violate SEC rules in proxy solicitations. Section 14(e) addresses proxy statements specifically. Thus, the Supreme Court's holding regarding § 14(a) is fully applicable to the nar-

rower § 14(e). *See also J.I. Case Co. v. Borak,* 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964), where the Court emphasized the Congressional concern for "fair corporate suffrage" represented by § 14 (citing H.R.Rep. No. 1383, 73rd Cong., 2nd Sess. 13).

votes of some of the minority shareholders in order to achieve the two-thirds approval needed for their victory.

The Supreme Court held that in these circumstances the proper test of causation, and thus of liability, was "materiality." A

2. The Court considered materiality to be a sufficient showing of causation where the proxy solicitation was "an essential link in the accomplishment of the transaction," *id.* at 385, 90 S.Ct. at 622. It did not require a showing that "the defect actually had a decisive effect on the voting." *Id.* at 384, 90 S.Ct. at 621. The objective test of materiality, said the Court, "will avoid the impracticalities of determining how many votes were affected, and, by resolving doubts in favor of those the statute is designed to protect, will effectuate the congressional policy of ensuring that the shareholders are able to make an informed choice when they are consulted on corporate transactions." *Id.*

The Second Circuit applied the *Mills* test in the § 14(e) case of *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.,* 480 F.2d 341 (2nd Cir.), *cert. denied,* 414 U.S. 910 and 924, 94 S.Ct. 231–32 and 234, 38 L.Ed.2d 148 (1973). This action involved a contest for control of Piper Aircraft between Chris-Craft Industries ("CCI") and Bangor Punta Corporation ("BPC"). CCI claimed, and the court found, that letters sent to shareholders by the Piper family, manager of Piper Aircraft, contained material misstatements and omissions and that a prospectus sent by BPC to Piper shareholders in connection with its exchange offer was misleading. The court presumed, since the misstatements and omissions were material, that without them the Piper shareholders would not have exchanged their shares in such numbers that BPC gained control of Piper Aircraft. The court stated:

It would be unduly burdensome to require an offeror to prove actual reliance when, as here, there are numerous shareholders who undoubtedly possess a wide range of expertise and knowledge. It would be impractical to require CCI to prove that each individual Piper shareholder who failed to trade for CCI's stock, or who traded for BPC's stock, relied upon defendants' misrepresentations in doing so. There impracticalities are avoided by establishing a presumption of reliance where it is logical to presume that reliance in fact existed.

*Id.* at 375 (citation omitted). The CCI court also stated that this "constructive reliance principle is particularly appropriate in class actions where proof of actual reliance by numerous class members would be impracticable." *Id.* at 374. *See also In Re Financial Securities Litigation,* 69 F.R.D. 24, 44 (S.C.Cal.1975).

The following year the Second Circuit affirmed certification of a takeover case as a class action. *Herbst v. Int'l Tel. & Tel. Co.,* 495 F.2d

finding of materiality, stated the Court, embodies a finding that the misstatement or omission "might have been considered important by reasonable shareholder who was in the process of deciding how to vote." *Id.* at 384, 90 S.Ct. at 621.[2]

1308 (2nd Cir.1974). Plaintiff alleged International Telephone and Telegraph Company violated the federal securities laws in its acquisition of the Hartford Fire Insurance Company. The appeals court treated plaintiffs' case as being grounded on § 14(e) and SEC Rule 10b–5 for the purpose of deciding whether a class action was appropriate. The court stated:

Here as in *Chris-Craft* and *Mills* the reliance of the individual shareholder is irrelevant. Here as in those cases plaintiff was damaged only if significant numbers of shareholders might have acted differently if they had known the truth. . . .

[I]t is appropriate for the district court to presume, as we did in *Chris-Craft,* that if there was a material misstatement, then Hartford shareholders would not have exchanged their shares at the rate offered if they had known the truth. . . .

*Id.* at 1316 (footnote omitted).

The concept of materiality, then, will play a key role in this class action. A material fact is one substantially likely "to have assumed actual significance in the deliberations of the reasonable shareholder" who was deciding how to vote. *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). As to omissions, it is not enough that a fact be one which a reasonable shareholder "might" consider important. *Id.* On the other hand, the materiality test "does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote." *Id. See Kramas v. Security Gas & Oil, Inc.,* 672 F.2d 766, 769 & n. 3 (9th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982) (the standard of materiality is the same under both § 10 and § 14 and for both omissions and misrepresentations). *See also Zell v. Intercapital Income Securities, Inc.,* 675 F.2d 1041, 1046 (9th Cir.1982); *Kass v. Arden-Mayfair, Inc.,* 431 F.Supp. 1037, 1042 (C.D.Cal. 1977); *Jackson v. Bache & Co., Inc.,* 381 F.Supp. 71, 87 n. 7 (N.D.Cal.1974); *Colonial Realty Corp. v. Baldwin-Montrose Chem. Co.,* 312 F.Supp. 1296, 1299 (E.D.Pa.1970) (fairness of merger terms not relevant in evaluating materiality); *In Re U.S. Financial Securities Litigation,* 69 F.R.D. at 45.

In sum, the materiality question in this case is whether there is a substantial likelihood a hypothetical reasonable PacTrust shareholder would have considered any omitted or misrepresented fact to have actual significance in de-

As summed up by the Eighth Circuit, "[a]fter *Mills,* we are not satisfied that a separate showing of reliance on a material misrepresentation in proxy solicitation materials can be required." *Selk v. St. Paul Ammonia Products, Inc.,* 597 F.2d 635, 639 (8th Cir.1979).[3]

### 2. *Section 10(b).*

Section 10(b) of the Securities Exchange Act of 1934, 48 Stat. 891, 15 U.S.C. § 78j(b), provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
> . . . .
>
> (b) to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b–5, 17 C.F.R. § 240.10b–5, provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement or a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or

---

liberating whether to vote to approve the KKR transaction.

**3.** *Selk* addressed an issue which had been left open in *Mills.* The Supreme Court there had specifically declined to hold that causation could not be shown if management controlled a sufficient number of shares to approve the transaction even absent any votes from the minority. *Mills,* 396 U.S. at 385 n. 7, 90 S.Ct. at 622. The Seventh Circuit had earlier held that a section 10(b) case was stated even where the controlling shareholder could have caused a merger absent any votes from minority shareholders. *Swanson v. American Consumer Industries, Inc.,* 415 F.2d 1326, 1331–32 (7th Cir. 1969) ("The power to effect a given result certainly does not negative all possibility of injury resulting from the fraudulent or manipulative use of that power.") In *Selk* the Eighth Circuit stated in dicta that the ability to effectuate a corporate act independently of the votes of minority shareholders should not insulate a company from liability for a materially false or misleading proxy statement. *Selk,* 597 F.2d at 638. In addition to *Swanson,* the court cited *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 380–84 (2nd Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975), *appeal after remand,* 551 F.2d 531 (1977). The *Schlick* court reversed a district court's decision to dismiss a complaint under sections 10(b) and 14(a) and held the fact that the minority shareholders' votes were not needed to consummate a merger would not defeat plaintiff's claims as lacking causation. The court stated the disclosure requirements, in addition to protecting minority shareholders, have two other purposes "which make a strict causation rule—whether under a 10(b) or a 14(a) claim—antithetical to it": by full disclosure, first, the market will be informed so as to permit well-based decisions and second, those in control might modify the terms of a merger. *Id.* at 384. "Even when management controls," stated one commentator, "injury can be inflicted on the corporation and its shareholders, and a causal relation can exist between the proxy violation and the injury, since the concept of causation in a legal sense is not coextensive with simple voting power." Note, Causation and Liability in Private Actions For Proxy Violations, 80 Yale L.J. 107, 107 (1970). While the *Mills* court left open the possibility that defendants may be able to rebut the presumption of causation by showing that sufficient votes would have been obtained to approve the transaction in any event, the commentator argues a causal relation between the violation and plaintiff's injury could still be established justifying imposing liability on defendants. *Id.* at 138. At the minimum, under *Mills,* establishment of a violation would entitle plaintiff to recover litigation expenses and reasonable attorneys' fees. *Id.* at 111.

It is most likely that the *Mills* footnote 7 issue will not arise in the present case because plaintiff will be able to show that the votes of her class members were required to effectuate the KKR takeover.

would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Section 10(b) and Rule 10b–5 thus cover a much broader range of conduct than does § 14(e), but to apply the Rule in a class action context involving a shareholder vote requires stretching Rule 10b–5 jurisprudence to cover a situation where § 14(e) already provides a remedy.

Plaintiff alleges the Proxy Statement contains both misrepresentations and omissions. When a case involves primarily omissions of material fact, reliance on the omissions may be presumed under *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) (applying *Mills* to a 10b–5 case). *See Dekro v. Stern Bros. & Co.,* 540 F.Supp. 406, 411 (W.D.Mo.1982).

■ In this circuit, a rule 10b–5 class action may be established without proof of individual reliance and causation. *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

■ Reliance was long a troublesome issue in 10b–5 securities class actions, but the *Blackie* decision has substantially simplified the problem. Under *Blackie,* plaintiff here may establish a prima facie case of causation by showing proof of sale and the materiality of the misrepresentations or omissions, without proof of reliance. *Id.* at 906. Causation remains a necessary element in any private action for damages under Rule 10b–5. *Stromfeld v. Great Atlantic & Pacific Tea Co., Inc.,* 484 F.Supp. 1264, 1270 (S.D.N.Y.1980). And generally, causation is established by proof of reliance. *Lorber v. Beebe,* 407 F.Supp. 279, 288 (S.D.N.Y.1975). But "reliance as a separate requirement is simply a milepost on the road to causation." *Blackie,* 524 F.2d at 906 n. 22. Following the Supreme Court's lead in *Mills* and *Affiliated Ute,* the Ninth Circuit in *Blackie* recognized that "materiality directly establish-

es causation more likely than not. . . ." *Id. See also Kahan v. Rosenstiel,* 424 F.2d 161, 173–74 (3rd Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970) (applying *Mills* rationale in 10b–5 action). *Cf. Kane. Assoc. v. Clifford,* 80 F.R.D. 402, 406–07 (E.D.N.Y.1978) (proof of purchase and materiality substitutes for proof of subjective individual reliance); *Tucker v. Arthur Andersen & Co.,* 67 F.R.D. 468, 480 (S.D.N.Y.1975) (materiality raises presumption of reliance).

This leaves the question, however, whether the "presumption" of reliance created by materiality can be rebutted in a Rule 10b–5 case.[4] The *Blackie* court stated:

> There is some debate as to whether the "presumption" of reliance may be rebutted; the general view is that it may be. . . . We doubt the right to disprove causation will substantially reduce a defendant's liability in the open market fraud context, as we doubt that a defendant would be able to prove in many instances to a jury's satisfaction that a plaintiff was indifferent to a material fraud. Nevertheless, we think the public purpose can be adequately served within the traditional compensatory suit framework by limiting recoveries to those who are in fact injured, and excluding those whom a defendant proves have not been injured. . . .

*Blackie,* 524 F.2d at 906 n. 22.

The possibility of rebuttal, however, poses a major stumbling block to certification of a Rule 10b–5 claim. While an immediate answer could be to bifurcate the trial, as plaintiff has suggested, Plaintiff's Reply Memorandum, p. 12 n. 5, and postpone trial of the rebuttal of individual causation and damages until a liability decision has been rendered, this "solution" would not resolve the conflict between proof of the 10b–5 causation element and the "predominance of common issues" requirement of Fed.R. Civ.P. 23(b)(3); it would merely *delay* reso-

---

**4.** As noted *supra* at note 3, some courts have regarded the presumption of causation from materiality in a § 14 case as irrebuttable as a matter of law. *See also Herbst,* 495 F.2d at

1316 n. 14. In any event, as suggested at the end of note 3, the facts of this case would probably preclude defendants from disproving causation under § 14(e)'s standards.

lution of the problem until a later date. As Judge Spencer Williams has noted wisely, this delay in effect prohibits the court from affirmatively finding the case is *manageable* as a class action as required by Rule 23(b)(3)(D). *In Re Memorex Security Cases,* 61 F.R.D. 88, 98 (N.D.Cal.1973). "Accordingly, the court is constrained to deal with the reliance enigma at the outset in making its determination of whether a class should be certified." *Id.*[5]

The *Blackie* court noted that a district court may be faced with challenging management problems in a federal securities class action, 524 F.2d at 906 n. 22, and indicated that a failure to find procedural innovations to expedite an action would cause the court to "reconsider whether to make proof of causation from materiality conclusive . . . . *Id.*

The court recognizes two approaches which will allow the trial of this action to be completed without bifurcation, except as to damages. First, there need be no rebuttal of causation as to those members of the class who, like plaintiff, voted against the sale to KKR. These shareholders had no choice but to sell, once the takeover was approved. Under *Blackie,* defendants may rebut a prima facie showing by disproving materiality. *Blackie,* 524 F.2d at 906. *See also Keirnan v. Homeland, Inc.,* 611 F.2d 785, 789 (9th Cir.1980). Under *Vine v. Beneficial Finance Co.,* 374 F.2d 627, 634–35 (2nd Cir.), *cert. denied,* 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967), defendants do not have the opportunity to prove that an individual plaintiff sold despite knowledge of the falsity of a representation, or that she would have, had she known of it, since no "forced seller" had that choice.[6] *Vine* holds that proof of reliance is "unnecessary in the limited instance when no volitional act is required" and when the defend-

---

5. The *Memorex* court dealt with the reliance issue by foreshadowing *Blackie* and ruling that a material misrepresentation combined with proof the market responded by inflating the price of stock would be sufficient to prove causation. The court noted that the reason for the reliance requirement is to certify that the conduct of the defendant actually caused the plaintiff's injury. *Id.* at 100. The causal connection could also be established by proving "fraud on the market." A commentator has summarized the theory as follows:

> If the false or misleading statement appears in a document (prospectus or press release) which the plaintiff had not read or which otherwise had not directly affected his decision, plaintiff will not be able to establish reliance. Hence, in this sense, such misrepresentations did not induce the transaction and were not the cause of the transaction. On the other hand, such misleading statements may have affected the price at which the security was purchased and, in this sense, caused plaintiff's loss. This had led to the development of what some have referred to as the "fraud on the market" theory, which creates a presumption with respect to actively traded securities that material misrepresentations have affected the market price of the security.

BLOOMENTHAL, 1982 SECURITIES LAW HANDBOOK 222 (1982).

6. In *Vine,* the appellant retained his stock in a target corporation after ninety-five percent of the outstanding stock had been acquired through a tainted tender offer by the appellee, a second corporation. The appellee merged the target corporation into itself under a short-form merger statute. This left appellant with stock in a nonexistent corporation and no market for his stock, except by exercising his statutory appraisal rights or by accepting the appellee's offer to purchase his shares.

Generally, only a purchaser or seller of securities can invoke § 10(b). *See, e.g., Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2nd Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1336 (1952). The *Vine* court ruled that a shareholder should be treated as a seller when the nature of his investment has been fundamentally changed from an interest in a going enterprise into a right solely to a payment of money for his shares. *Vine,* 374 F.2d at 634–35. *See Dudley v. Southeastern Factor and Finance Corp.,* 446 F.2d 303, 307 (5th Cir.), *cert. denied sub nom., McDaniel v. Dudley,* 404 U.S. 858, 92 S.Ct. 109, 30 L.Ed.2d 101 (1971).

The forced seller doctrine, then, developed as one of many exceptions to the strict *Birnbaum* rule. *See Manor Drug Stores v. Blue Chip Stamps,* 339 F.Supp. 35, 39 (C.D.Cal.1971), *rev'd on other grounds,* 492 F.2d 136 (9th Cir. 1973), *rev'd,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). *See also Alley v. Miramon,* 614 F.2d 1372, 1384–87 (5th Cir.1980) (holding that the forced seller doctrine survives *Blue Chip Stamps* ).

The doctrine however, not only opens the courtroom door to a plaintiff who has not actually sold her stock; it negates the defendants' opportunity to avoid liability by disproving individual reliance for those in plaintiff's shoes.

ant "by deceiving A can cause B to become a seller." *Id.* at 635.[7]

Second, to the extent defendants should receive an opportunity to rebut causation, they will have to do so in the context of a class action with its representative nature. *See, e.g., Hurwitz v. R.B. Jones Corp.,* 76 F.R.D. 149, 158–59 (W.D.Mo.197). There the court, without expressing an opinion as to whether subjective reliance is an issue at all in a § 14(e) or Rule 10b–5 case, held that such a question would be common to each class member and that there would be nothing unique about a defense of lack of reliance. *See also Blackie,* 524 F.2d at 906 n. 22: "The right to disprove causation will not render the action unmanageable. A defendant does not have unlimited rights to discovery against unnamed class members; the suit remains a representative one." *Cf. Herbst v. Able,* 47 F.R.D. 11, 20 (S.D.N.Y. 1969) (discussing typical nature of reliance issue); *Memorex,* 61 F.R.D. at 101 (quoting *Herbst*).

The *McFarland* decision, *supra,* is an important recent application in this circuit of the *Blackie* principles. There Judge William Ingram of the Northern District of California certified a class even though there might be differences in the class members' acquisition of and reliance on relevant information. *McFarland,* 96 F.R.D. at 361–62. *See also Oscar Gruss & Son v. Geon Industries, Inc.,* 75 F.R.D. 531, 534 (S.D.N.Y.1977) (commonality requirement met in 10b–5 case notwithstanding existence of disparate questions as to reliance and damages).

3. *Section 18(a).*

Section 18(a) of the Securities Exchange Act of 1934, 48 Stat. 897, 15 U.S.C. § 78r(a), provides:

Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this chapter or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 78o of this title, which statement was at the time in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading.

Under § 18(a), plaintiff must establish reliance on the actual filed document; constructive reliance is not sufficient. *See Ross v. A.H. Robins Co.,* 607 F.2d 545, 552–53 (2nd Cir.), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802, *reh'g denied,* 448 U.S. 911, 100 S.Ct. 3057, 65 L.Ed.2d 1140 (1979); *Heit v. Weitzen,* 402 F.2d 909, 916 (2nd Cir.1968), *cert. denied,* 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969). The purpose of § 18(a) is to further the particular objective of encouraging reliance upon records filed with the SEC by expressly authorizing damage actions against those making false filings. *Ross,* 607 F.2d at 556.

One commentator has suggested that the reliance requirement has made § 18(a) "largely an ineffective remedy." BLOOMENTHAL, 1982 SECURITIES LAW HANDBOOK § 11.06 at 184 (1982). As only one document is disputed, the claim embodies common questions of law and fact as to the materiality of any omissions or misrepresentations. However, as to proof of individual reliance, plaintiff does not meet the commonality requirement.

*Mount Clemens Industries, Inc. v. Bell,* 464 F.2d 339, 346–47 and n. 14 (9th Cir.1972) (declining to apply doctrine where plaintiffs never owned shares).

---

7. The Ninth Circuit has not formally applied the forced seller doctrine but has given it credence. *See Shivers v. Amerco,* 670 F.2d 826, 830 (9th Cir.1982) (declining to apply doctrine where plaintiffs were not forced to sell);

4. *Section 20(a).*

Section 20(a) of the 1934 Act, 48 Stat. 899, 15 U.S.C. § 78t(a), provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

This claim poses common questions of law and fact.

5. *Common Law Fraud, Negligent Misrepresentation.*

■ There is a strong policy toward class certification of pendent state law claims where federal securities law claims are being certified. *See Cameron v. E.M. Adams & Co.,* 547 F.2d 473, 478–79 (9th Cir.1976); *Sullivan v. Chase Ins. Services of Boston, Inc.,* 79 F.R.D. 246, 269 (N.D.Cal. 1978); *Dekro, supra.* The *Cameron* case, however, dealt only with factual omissions. In that situation the Ninth Circuit could properly state that plaintiffs' proof of the state law violations would probably be the same as that which would support their Rule 10b–5 claims.

Individual reliance on fraud and misrepresentation is required at common law. *See Rice v. McAlister,* 268 Or. 125, 128, 519 P.2d 1263, 1265 (1974); *McDonald v. Title Insurance Co. of Oregon,* 49 Or.App. 1055, 1060, 621 P.2d 654, 658 (1980); *McFarland,* 96 F.R.D. at 364. The *McFarland* court refused to certify a class for the plaintiffs' state law claims. Plaintiff here points out that such certification in *McFarland* would have raised questions of fact and law under the laws of each state where stock was purchased and thus common issues did not predominate over individual ones. However, Judge Ingram also decided not to certify

state law claims because there were problems of individual proof.

> For instance, individual reliance on fraud and the misrepresentation must be proven by plaintiffs. This may not be an essential element of a class action brought under Section 10, but it is still a requirement of common law fraud and deceit. *Tober v. Charnita, Inc.,* 58 F.R.D. 74 (M.D.Pa.1973).

*Id.* As another court stated, "[o]bviously, a common law fraud claim raises issues which are personal to each individual plaintiff and, therefore, not common to the class." *Seiden v. Nicholson,* 69 F.R.D. 681, 686 (N.D.Ill.1976).

■ I find that the differences in the state pendent claims of common law fraud and negligent misrepresentation outweigh the similarities. Plaintiff has not met the commonality requirement as to these claims.

6. *Oregon Securities Law Claims.*

The same considerations with respect to commonality apply to the Oregon securities law claims as apply to the federal securities law claims. I find plaintiff has met the commonality requirement as to these claims.

7. *Conclusion.*

■ Plaintiff has met the commonality requirement as to her claims under §§ 10(b), 14(e), and 20(a) and the Oregon securities laws.[8]

## III. TYPICALITY.

A. *Standards.*

The claims of the representative plaintiff must be typical of the claims of the class. Fed.R.Civ.P. 23(a)(3).

■ The claims of the representative and of the putative class must be grounded in the same legal theories, but the claims of the plaintiff need not be factually identical

---

**8.** For reasons stated in the next section, I find plaintiff's claims are not typical of those of arbitrageurs, sellers to the market, and APC Investments, Inc. ("APCI"). I therefore do not discuss whether the commonality requirement is met as to these groups.

with those of the class. *Penk v. Oregon State Bd. of Higher Educ.,* 93 F.R.D. 45, 50 (D.Or.1981). Nevertheless, I am required to consider the nature and range of proof necessary to establish the allegations in the complaint. *In Re Coordinated Pretrial Proceedings,* 691 F.2d 1335, 1342 (9th Cir.1982). *See also In Re Northern Dist. of Calif., Dalkon Shield IUD Products Liability Litigation,* 693 F.2d 847, 854–55 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983).

### B. *Application.*

■ Defendants argue plaintiff's class should not include arbitrageurs who purchased PacTrust shares subsequent to the November 16, 1982 public announcement of the proposed stock exchange agreement. I find that the post-announcement market is fundamentally different from the normal market in that investors are willing to pay an otherwise premium price for stock based upon their willingness to assume the risk that the transaction will be consummated. *See generally Zeidman v. J. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1036 (5th Cir.1981).

I find that plaintiff's claims are not typical of arbitrageurs.

Defendants argue plaintiff's class should not include sellers to the market, those persons who sold their shares to the market prior to February 16, 1983, the date shareholders voted to approve the takeover. I find that sellers to the market are the sell-side of the arbitrage class. Their only apparent purpose in selling below the offered price of $38.50 per share was fear that the transaction would not be approved. In addition, none of them could assert a claim under § 14(e) and regulations promulgated thereunder because none of them was a shareholder on the date of the vote. ,

I find that plaintiff's claims are not typical of sellers to the market.

Defendants argue plaintiff's class should not include APC Investments, Inc.

9. The exchange was approved by a rate of 747,846 shares to 51,157, with 6,244 absten-

("APCI"). APCI had made an independent valuation of PacTrust and initiated its own tender offer at $37.00 per share for up to fifty-one percent of PacTrust's shares. APCI later withdrew its offer. *See generally Pacific Realty Trust v. APC Investments, Inc.,* Civ. No. 81–1046–PA (D.Or.).

Considering the number of shares held by APCI and its independent knowledge of· PacTrust, I find that plaintiff's claims are not typical of APCI.

Defendants argue plaintiff's class should not include shareholders who were present at the February 16th meeting or otherwise knew of plaintiff's claims and supported the sale.[9] This argument ignores plaintiff's allegations that she was deceived by the alleged misrepresentations.

I find that plaintiff's claims are typical of similarly situated shareholders who disagreed with her judgment.

### IV. REPRESENTATIVENESS.

### A. *Standards.*

The representative parties must fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4).

■ A class representative must be part of the class and possess the same interest and suffer the same injury as the class members. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982); *Aleknagik Natives Ltd. v. Andrus,* 648 F.2d 496, 505 (9th Cir.1980); *E.E.O.C.,* 599 F.2d at 327.

### B. *Application.*

■ I find that the named plaintiff will fairly and adequately protect the interests of the class. She is represented by competent and experienced counsel. This is not likely to be a collusive suit and she does not have interests which are antagonistic to the interests of the other shareholders she purports to represent.

tions and 141,980 shares not voting.

## V. PREDOMINANCE AND SUPERIORITY.

### A. *Predominance.*

#### 1. *Standards.*

For certification under Rule 23(b)(3), questions of law or fact common to the members of the class must predominate over any questions affecting only individual members. Fed.R.Civ.P. 23(b)(3).

■ The issues in the class action that are subject to generalized proof and thus applicable to the class as a whole must predominate over those issues that are subject only to individualized proof. *Nichols v. Mobile Board of Realtors, Inc.,* 675 F.2d 671, 676 (5th Cir.1982). *See also Pistoll,* 96 F.R.D. at 28.

#### 2. *Application.*

■ As to plaintiff's claims under §§ 10(b), 14(e), and 20(a) and the Oregon securities laws, I find that there is a predominance of questions which are common to the class over the questions which are pertinent only to individual purchasers, when the class is limited as specified in the discussion of typicality. The mere presence of potential individual issues in the rebuttal of the presumption of causation or the question of damages does not defeat the predominance of common questions. *See Dekro,* 540 F.Supp. at 416–17; *McFarland,* 96 F.R.D. at 363–64; *Simer,* 661 F.2d at 674; *Williams v. Sinclair,* 529 F.2d 1383, 1388 and n. 7 (9th Cir.), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976); *Blackie,* 524 F.2d at 905–06. Under § 18(a), common law fraud and negligent misrepresentation, plaintiff would need to prove individual, subjective reliance as part of her prima facie case. As to these claims, there is not a predominance of common questions. *See Elster v. Alexander,* 76 F.R.D. 440, 442 (N.D.Ga.1977), *appeal dismissed,* 608 F.2d 196 (5th Cir.1979) (predominance requirement not met for § 18(a) claim).

I find plaintiff has met the predominance requirement.

### B. *Superiority.*

#### 1. *Standards.*

For certification under Rule 23(b)(3), the class action must be superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3).

The matters pertinent to a finding regarding superiority include the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3)(D).

■ A primary determination to be made is whether the class action is superior to, and not just as good as, other available methods for handling the controversy. Such a determination lies in the court's discretion. *Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d 668, 673 (9th Cir.1975). The court must consider the difficulties likely to be encountered in the management of a class action. *Simer v. Rios,* 661 F.2d 655, 668 n. 24 (7th Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982).

#### 2. *Application.*

■ In light of the discussion of "commonality," *supra,* and considering the criteria articulated in Rule 23(b)(3), I find that a class action is the superior mode for conducting this litigation.

### CONCLUSION

The Supreme Court recently stated,

As we noted in *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351, "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Id.,* at 469, 98 S.Ct. at 2458 (quoting *Mercantile Nat'l Bank v. Langdeau,* 371 U.S. 555, 558, 83 S.Ct. 520, 522, 9 L.Ed.2d 523).... Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.

*General Telephone Co. of Southwest,* 457 U.S. at 160, 102 S.Ct. at 2372.

The decision to certify a class, then, once made, is only a tentative determination. Under Fed.R.Civ.P. 23(c)(1), the court may alter or amend the certification order as evidence develops and before the decision on the merits. *See Key v. Gillette Co.,* 90 F.R.D. 606, 608 (D.Mass.1981). An initial determination does not necessarily establish the class which will ultimately be bound by the judgment. *Penk,* 93 F.R.D. at 49. *See also Officers for Justice v. Civil Service Commission,* 688 F.2d 615, 633 (9th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983).

Recognizing the flexibility these principles provide,

IT IS HEREBY ORDERED that a class is certified under Rule 23(b)(3) consisting of all persons who beneficially owned shares of PacTrust common stock on February 16, 1983, except the following: (1) persons who purchased such shares on or after November 16, 1982; (2) APCI and its affiliates; and (3) defendants herein, their spouses, children, nominees, representatives, heirs, and any other persons or entities within the domination or control of such persons.

IT IS FURTHER ORDERED that class action status will apply only to plaintiff's causes of action of §§ 10(b), 14(e), and 20(a) and the Oregon securities laws.

IT IS FURTHER ORDERED that any proposed alteration or amendment to this order desired by a party shall be brought before the court as soon as practicable following discovery of the facts believed to warrant it.

IT IS FURTHER ORDERED that counsel for defendants prepare and submit to the court no later than five (5) days from the date hereon of a proposed form of notice to be sent to members of the class. Plaintiff is to respond to the proposed notice by August 15, 1983.